U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
JAN 20 2006
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ALVIN B. TRUESDALE                 CIVIL ACTION NO. 05-1308-A
FED. REG. NO. 09431-058

                                     SECTION P

VS.

                                     JUDGE DRELL
FREDERICK MENIFEE, ET AL.          MAGISTRATE JUDGE KIRK

### REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* filed pursuant to the provisions of 28 U.S.C. §2241 by *pro se* petitioner Alvin B. Truesdale on or about July 21, 2005. Truesdale is a prisoner in the custody of the Federal Bureau of Prisons (BOP). He is presently incarcerated at the Federal Corrections Institute at Estill, South Carolina, however, when he filed his petition he was housed at the United States Penitentiary, Pollock, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### STATEMENT OF THE CASE

The petition, its accompanying memorandum and exhibits, along with the published jurisprudence of the United States Courts and the unpublished records of those courts available through the PACER system establish the following relevant facts:

1. On or about February 6, 1992, the grand jury for the

United States District Court for the Western District of North Carolina indicted petitioner and twenty-one other defendants with participation in a conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §846. Petitioner was also charged with maintaining a Continuing Criminal Enterprise (CCE) in violation of 21 U.S.C. §848. [Exhibit 2; see also United States of America v. Truesdale, et al., 3:92-CR-0034 (W.D.N.C.)[1]]

Petitioner was convicted following trial by jury and he was sentenced to serve a life sentence on the CCE conviction. [Exhibit 34, Judgment[2]] His conviction and sentence were ultimately affirmed on appeal to the United States Court of Appeals for the Fourth Circuit. See United States of America v. Janice McManus, et al., 23 F.3d. 878 (4th Cir. 1994), appeal after remand, U.S. v. Truesdale, 78 F.3d 580 (4th Cir.1996), certiorari denied by, Truesdale v. U.S., 517 U.S. 1215, 116 S.Ct. 1839, 134 L.Ed.2d 942 (1996), Leave to File for Rehearing Denied

---

[1] With regard to the CCE allegation, the Bill of Indictment charged, in pertinent part, "From January 1987, and continuing thereafter, until the present, within the Western District of North Carolina, ALVIN TRUESDALE knowingly, willfully and intentionally did engage in a continuing criminal enterprise..." [Exhibit 2] (Emphasis supplied)

[2] According to the Amended Judgment dated January 23, 1995, Judge Robert D. Porter specifically noted that the CCE offense concluded in February 1992. [Exhibit 34] The pre-sentence investigation report noted, "From January 1987 until the filing of the Indictment, Alvin Truesdale ran a large scale cocaine distribution organization in the Charlotte, North Carolina area..." [Exhibit 41] (Emphasis supplied)

by <u>Truesdale v. U.S.</u>, 518 U.S. 1041, 117 S.Ct. 14, 135 L.Ed.2d 1109 (1996).[3]

On March 22, 1996, he filed a Motion to Vacate pursuant to 28 U.S.C. §2255. On April 11, 1996 his motion was denied and dismissed. See <u>Truesdale v. U.S.A.</u>, No. 3:96-cv-00109 (U.S.D.C. W.D. of N.C.). His appeal of the denial of the §2255 Motion was ultimately dismissed by the Fourth Circuit Court of Appeal in an unpublished opinion., see <u>U.S. v. Truesdale</u>, 105 F.3d 650 (4th Cir.(N.C.), and, in due course, his application for *certiorari* in the United States Supreme Court was *denied*, <u>Truesdale v. U.S.</u>, 522 U.S. 856, 118 S.Ct. 154, 139 L.Ed.2d 99, (1997).

2. In 2002 petitioner began to question whether or not he might be eligible for parole. He was advised by the United States Parole Commission that the conviction on count one of the indictment which charged petitioner with his participation in a CCE was a non-parolable offense. [Exhibit 8] Petitioner appealed that decision to the National Appeals Board and on July 16, 2002, that agency advised,

> "Your claim that you should be paroled from your sentence on Count 1 of your indictment is without merit. The offense charged in Count 1 was a violation of 21 U.S.C. 848: Continuing Criminal Enterprise. <u>The Pre-Sentence Report and the Judgment from the U.S. District Court indicate that the offense</u>

---

[3] "...Alvin Truesdale's CCE (continuing criminal enterprise) conviction was based, in part, on the §846 conspiracy; therefore, the §846 conspiracy conviction must be vacated." 23 F.3d at 884.

> in Count 1 concluded in February 1992. The
> Sentencing Reform Act (SRA) applies to all
> offenses committed on or after November 1,
> 1997. You were therefore correctly sentenced
> under the federal sentencing guidelines on
> Count 1 to a non-parolable sentence since the
> crime extended beyond November 1, 1997."
> [Exhibit 9](Emphasis supplied)

3. From sometime in 2001 through 2003 petitioner submitted a series of Administrative Remedies Procedure Grievances to the BOP raising issues concerning the date of the offense set forth as Count One in his indictment and his eligibility for parole.[4] In each instance, his ultimate appeal to the National Inmate Appeals administrator was denied. [See Exhibits 17-22[5]]

4. On or about July 10, 2003 petitioner filed a *pro se* pleading seeking a Writ of Mandamus under 28 U.S.C. §§ 1651

---

[4] See Exhibits 33, 36, 37, 42, and 43.

[5] Exhibit 17 – Response dated November 15, 2001, ARP No. 244345-A2, "The Federal Bureau of Prisons does not have the authority to amend or alter your conviction or the term of your sentence." Exhibit 18 – Response dated April 2, 2002, ARP No. 248685-A3, "This issue was previously addressed in Central Office Administrative Appeal No. 244345-A2." Exhibit 19 – Response dated April 24, 2002, ARP No. 256342-A1, "... you will not be released from custody as your Life sentence was imposed pursuant to 18 U.S.C. §3559, a statute that does not authorize the U.S. Parole Commission to release an inmate on parole." Exhibit 20 – Response dated July 10, 2003, ARP No. 284528-A3, "...the issues you raise related to the dates of offense in your case were previously addressed in Central Office Administrative Remedy No. 2444345-A2." Exhibit 21 – Response dated April 28, 2003, ARP No. 284526-A1, "We concur with the previous findings...". Exhibit 22 – Response dated June 25, 2003, ARP No. 286821-A3, "The Bureau of Prisons does not have the authority to review the legality of decisions rendered by the sentencing court; therefore, the issue you raise should be directed to the court in which you were convicted and sentenced."

and/or 1361 in the United States District Court for the District
of South Carolina. Therein petitioner asked the court to direct
the United States Parole Commission to recognize that his CCE
conviction occurred prior to November 1, 1987 and that petitioner
was thus eligible for parole since the provisions of the
Sentencing Reform Act which prohibited parole should not have
applied to his sentence.

Sometime thereafter, petitioner filed a Motion for Voluntary
Dismissal which was granted on November 17, 2003 by District
Judge David C. Norton.[6] [See <u>Alvin B. Truesdale v. Joseph V.
Smith, Warden, et al.</u>, No. 8:03-2239 (U.S.D.C. South Carolina)]

Petitioner appealed the dismissal to the United States Court
of Appeal for the Fourth Circuit. On February 1, 2005, the
dismissal was affirmed in an unpublished opinion. See <u>Truesdale
v. Smith</u>, 119 Fed. Appx. 573 (4th Cir. 2005)(unpublished).

5. On or about July 21, 2005 petitioner filed the instant
petition for writ of *habeas corpus* raising the following grounds
for relief:

I. "Petitioner is unlawfully being held in custody because
Respondent(s) failed to recognize his Old Law status on Count 1

---

[6] Truesdale's Motion to Dismiss was conditional. He moved to
dismiss only in the event that the court would refuse to grant
mandamus relief under either §1651 and/or §1361. The court
determined , "Truesdale cannot obtain either in the present case,
and therefore his Motion should be granted." See <u>Truesdale v.
Smith</u>, No. 8:03-cv-02239 at Doc. 7, p. 2.

of a Government Indictment filed February 6, 1992." [Doc. 1-3, pp. 22-23]

II. "The Bureau of Prisons erroneously or unlawfully changed the date[] of Count One of Petitioner's indictment by way of BOP Sentry Computer System and all of the Respondent(s) overlooked the same." [id., pp. 24-27]

III. "Petitioner is unlawfully being held in custody because Bureau of Prisons and United States Parole Commission failed to inform him of his Old Law status and failed to submit the necessary paperwork that would place him on the docket of the Commission forthwith when it became apparent that he was an Old Law inmate on Count One (CCE)." [id., pp. 27-30]

IV. "The Bureau of Prisons erroneously or unlawfully changed the date of Count One of petitioner's indictment after petitioner proved that it was/is impossible for the date 2/92, 2/11/92, 2/15/88, 9/1/89, and/or any other date besides January 1987." [id., pp. 30-31]

V. "The United States Parole Commission violated petitioner's constitutional and/or statutory rights to due process by erroneously refusing to fully exercise its 'duty' to make an independent factual finding concerning the date of Count One and grant petitioner an initial parole hearing on the same forthwith." [id., pp. 32-50]

VI. "The District Court for the Western District of North

Carolina misapplied the Sentencing Guideline as regards to 'New Law' sentencing enhancement for an 'Old Law' conviction on Count One (1)(CCE)." [*id.*, pp. 50-58]

VII. "<u>Richardson v. United States</u>, 526 U.S. 813, 119 S.Ct. 1707, 1713, 143 L.Ed.2d 985 (1999) requires that the Petitioner's 21 U.S.C. §848 conviction be vacated." [*id.*, pp. 59-65]

VIII. "<u>Bailey v. United States</u>, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) requires that the petitioner's 18 U.S.C. §924(c)(1) convictions be vacated." [*id.*, pp. 65-68]

## **LAW AND ANALYSIS**

### 1. Section 2241 or Section 2255?

The initial inquiry is whether or not petitioner's claims (either collectively or individually) are properly raised in a § 2241 *habeas corpus* petition. Section 2241 is generally used to challenge the <u>manner</u> in which a sentence is executed. See <u>Warren v. Miles</u>, 230 F.3d 688, 694 (5th Cir.2000). On the other hand, 28 U.S.C. §2255, provides the process which allows federal inmates to collaterally attack the legality of their convictions or sentences. See <u>Cox v. Warden, Fed. Det. Ctr.</u>, 911 F.2d 1111, 1113 (5th Cir.1990).

Federal prisoners may use §2241 to challenge the legality of their convictions or sentences <u>but only</u> if they satisfy the § 2255 "savings clause." See <u>Reyes-Requena v. United States</u>, 243 F.3d 893, 901 (5th Cir.2001). The "savings clause" provides that

a federal convict may file a writ of *habeas corpus* pursuant to §2241 if the § 2255 motion's remedy is "inadequate or ineffective to test the legality of his detention." See 28 U.S.C. § 2255. A prisoner seeking such relief under the "savings clause" must establish that: (1) his claim is based on a retroactively applicable Supreme Court decision which establishes that he may have been convicted of a nonexistent offense, and (2) his claim was foreclosed by circuit law at the time when the claim should have been raised in his trial, appeal, or first § 2255 motion. Reyes-Requena, 243 F.3d at 904. Such petitioners bear the burden of demonstrating that the § 2255 remedy is inadequate or ineffective. Jeffers v. Chandler, 253 F.3d 827, 830 (5th Cir.2001); Pack v. Yusuff, 218 F.3d 448, 452 (5th Cir.2000). The fact that a prior § 2255 motion was unsuccessful, or that the petitioner is unable to meet the statute's second or successive requirement, does not make § 2255 inadequate or ineffective. Jeffers, 253 F.3d at 830; Toliver v. Dobre, 211 F.3d 876, 878 (5th Cir.2000).

## 2. Claims I-V

Petitioner argues eight claims for relief. Claims I-V may be fairly characterized as an attack on the manner in which petitioner's sentence is being executed. Petitioner contends that his present custody is unlawful because Respondents: (1) failed to recognize his "Old Law" status; (2) unlawfully changed the

date of the offense in their computer system; (3) failed to inform him of his "Old Law" status; (4) unlawfully changed the date of the offense; and, (5) failed to make an independent fact finding concerning the date of the offense in question. Thus, with respect to these claims, petitioner does not suggest error occurring at trial, but rather post-conviction error. Accordingly, it appears that Section 2241 is the appropriate procedural vehicle to raise these claims.

Petitioner's claims are based upon the following argument:

1. The Sentencing Reform Act of 1984 changed drastically a number of provisions relative to sentencing federal convicts; with respect to the instant case, the Act eliminated the possibility for parole for convicts such as petitioner convicted of violations of 21 U.S.C. §848. However, that is so only if it can be determined that the criminal conduct in question occurred subsequent to the effective date of the Act since the Act applies only to those offenses occurring on or after its effective date, November 1, 1987. See Sentencing Reform Act, Pub.L. No. 98-473, § 235(a)(1), 98 Stat. 2031, amended by Pub.L. No. 99-217, § 4, 99 Stat. 1728 (1985); see also United States v. Byrd, 837 F.2d 179, 181 (5th Cir.1988).

2. Petitioner claims that the beginning and ending date of the CCE offense (Count One) is January, 1987.

3. Petitioner thus contends that he is entitled to parole

under the "Old Law" since his CCE offense occurred in January,
1987, prior to the November, 1987 effective date of the
Sentencing Reform Act's prohibition against parole.

28 U.S.C. §2243 provides in pertinent part:

> A court, justice or judge entertaining an
> application for a writ of habeas corpus shall
> forthwith award the writ or issue an order
> directing the respondent to show cause why
> the writ should not be granted, <u>unless it
> appears from the application that the
> applicant or person detained is not entitled
> thereto.</u>

With regard to Claims I-V, the petition and exhibits
submitted by the petitioner clearly establish that he is not
entitled to the relief he seeks. As shown above, the linchpin of
petitioner's claims is his assertion that the CCE ended prior to
the effective date of the Sentence Reform Act. That assertion is
clearly refuted by the evidence submitted by the petitioner
himself.

The Indictment, with regard to the CCE charge in Count I
clearly stated that the offense occurred, "<u>From January 1987, and
continuing thereafter, until the present</u>..." The Indictment was
filed on February 6, 1992 and therefore, the date of the offense,
as set forth in the Indictment was from January, 1987 up to and
including February 6, 1992. [Exhibit 2, pp. 1-2] Further, the
Amended Judgment dated January, 1995 specifically states that the
CCE offense, set forth as Count 1, <u>concluded in February, 1992.</u>
[Exhibit 34] Finally, the Fourth Circuit Court of Appeals noted

the following facts in their opinion affirming petitioner's convictions:

> At trial, persuasive evidence showed that Alvin Truesdale ran a large drug operation in Charlotte, North Carolina, involving several drug houses and links with drug suppliers in Florida and New York and that each of the appellants here played some role in the conspiracy. The chief witness for the prosecution was James Scales, a friend of Alvin Truesdale, who had been involved in many of the drug operations. Trial testimony revealed that Alvin Truesdale had originally operated his illicit drug business in 1987 out of a parking lot in Charlotte. Through his association with Scales, Truesdale developed primary sources for large quantities of cocaine in Florida. After Truesdale established these contacts, Scales would drive to Florida every other week and pick up an average of two to three kilograms of cocaine for Truesdale. Generally, Scales received reimbursement for his cocaine purchases at the home of Janice McManus, Truesdale's girlfriend. McManus was often at her house when the cocaine was delivered and would allow it to be stored there.
>
> Shortly after he began his enterprise, Truesdale opened another drug house called the "Money Pit" and established a group of workers there. He recruited a drug dealer, Rod "Big Daddy" Williams, and other low-level distributors who worked for Williams. Soon thereafter, Williams and his former employer engaged in a gun fight as a result of Williams' defection to Truesdale, and Williams shot his former drug boss with a 9mm Uzi furnished by Truesdale. Truesdale rapidly expanded his operation to include drug houses on Allen Street, in the Westwood Apartments, on Merriman Avenue, on Mayfair Avenue, in Griertown, and in a club called the "Nite Life," while maintaining his original two locations. Operators from each location were responsible for taking the proceeds of the

drug sales to Truesdale at his nightclub, "The Jaguar Club."

In late 1989 Truesdale attempted to expand further, putting together several operations designed to secure large purchases of cocaine or cocaine base. These efforts were unsuccessful, and Truesdale was "ripped off" at least three times during that period, resulting in his loss of several hundreds of thousands of dollars. In retaliation, Truesdale sent Scales and two of his other employees to Florida with orders to blow up the homes of the mothers of his duplicitous sources of supply. On the way to Florida, however, Scales and the others were arrested, and the bombings never occurred.

Appellant Tennison Harris was employed by Truesdale throughout the conspiracy. He always carried weapons, and he had served as an enforcer since the beginning of the operation. Alton Truesdale, Alvin's uncle, was responsible for operating the Money Pit, in addition to making trips to Florida to obtain kilograms of cocaine. Connell Robinson was an employee of Truesdale, recruited by Rod Williams. He was responsible for overseeing drug sales at the Westwood Apartment location, the "Gate House" on Mayfair Avenue, and the Money Pit. Robinson paid other, lower-level employees of Truesdale for their drug sales and carried a 9mm Uzi.

Alvin Truesdale was convicted of the twenty-two charges against him remaining at the time of trial.

*       *       *

He argues that the district court erred in not dismissing his § 846 conspiracy count, given that he was also convicted of running a CCE in violation of 21 U.S.C. § 848. The underlying crimes used to support the CCE charge in Count One were Truesdale's violation of § 841 and his participation in a drug conspiracy in violation of § 846. Under

> Count Two, he was also convicted for the same
> conspiracy in violation of § 846. [The
> conduct underlying the CCE charge in Count
> One and the conduct underlying the conspiracy
> charge in Count Two was coterminous.⁷] We
> agree that "a defendant convicted under § 848
> may not also be convicted for any predicate
> conspiracy charges proved as elements of the
> § 848 offense. 'Congress did not intend that
> an individual be punished under both [§§ 846
> and 848].' " United States v. Butler, 885
> F.2d 195, 202 (4th Cir.1989) (quoting United
> States v. Porter, 821 F.2d 968, 978 (4th
> Cir.1987), cert. denied, 485 U.S. 934, 108
> S.Ct. 1108, 99 L.Ed.2d 269 (1988)). Our
> Butler court vacated the defendant's
> conspiracy convictions because the indictment
> had expressly referenced the conspiracy
> charges as predicate offenses for the § 848
> violation. Likewise, Alvin Truesdale's CCE
> conviction was based, in part, on the § 846
> conspiracy; therefore, the § 846 conspiracy
> conviction must be vacated. This case is
> accordingly remanded with instructions to the
> district court to vacate Alvin Truesdale's
> conviction on Count II of the indictment.
> United States v. McManus, et al., 23 F.3d
> 878, 881, 884.

Thus, as can be seen by the Court's recitation of the facts,
the acts supporting the CCE masterminded by the petitioner
occurred for a period of time which, though commencing before the
effective date of the SRA, continued up to the date that
petitioner and his cohorts were indicted, arrested, and brought
to justice. Further, while the SRA applies only to offenses

---

[7] The dates alleged with respect to Count 2, conspiracy, are
likewise, "From January 1987, and continuing thereafter, until
the present..." [Exhibit 2, p. 2] If, as the Court of Appeals
observed, the CCE and the conspiracy are "coterminous", then it
is abundantly clear that the offense dates of the CCE Count are
from January, 1987 to February, 1992.

committed _after_ November 1, 1987, it most definitely applies to continuing offenses in which acts comprising the crime occur both before and after its effective date. See United States v. Morrison, 938 F.2d 168, 170 (10th Cir.1991) (quoting United States v. Bakker, 925 F.2d 728, 739 (4th Cir.1991)). See also United States v. Rogers, 960 F.2d 1501, 1514 (10th Cir.), _cert. denied_, 506 U.S. 1035, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992); United States v. Williams, 897 F.2d 1034, 1040 (10th Cir.1990), _cert. denied_, 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991) (Guidelines applied to conspiracy beginning before and continuing after November 1, 1987); United States v. Terzado-Madruga, 897 F.2d 1099, 1123 (11th Cir.1990); United States v. Lee, 886 F.2d 998, 1003 (8th Cir.1989), _cert. denied_, 495 U.S. 906, 110 S.Ct. 1926, 109 L.Ed.2d 290 (1990); United States v. Boyd, 885 F.2d 246, 248 (5th Cir.1989).

Petitioner's claims to the contrary are simply not supported by the record he himself has submitted. Further, with respect to Claims I-V, petitioner faults the BOP and the United States Parole Commission for their failures to "recognize" his Old Law status, for "changing" the date of the offense, and for violating their "duty" to make a fact finding independent of the trial court's findings with respect to the dates of the offense in question.

Of course, these allegations have support neither in fact

nor law. Neither the BOP nor the Parole Commission "changed" the dates of the offense. Further, petitioner has pointed to no law, statutory or jurisprudential, which imposes a duty on these agencies to question the findings of the United States Courts.

Since it appears from the petition that the petitioner is not entitled to relief, Claims I-V should be dismissed on that basis.

### 3. Claim VI

While Claims I-V appear to attack the manner in which petitioner's sentence is being executed, it is abundantly clear that the remaining claims attack the validity of the conviction itself.

In Claim VI petitioner specifically faults the District Court for its misapplication of the Sentencing Guideline.

Typically, such claims should be addressed in a §2255 Motion to Vacate, unless petitioner can show that he remedy afforded by that statute is inadequate or ineffective. Federal prisoners may use §2241 to challenge the legality of their convictions or sentences but only if they satisfy the § 2255 "savings clause." See Reyes-Requena v. United States, 243 F.3d 893, 901 (5th Cir.2001). The "savings clause" provides that a federal convict may file a writ of habeas corpus pursuant to §2241 if the § 2255 motion's remedy is "inadequate or ineffective to test the legality of his detention." See 28 U.S.C. § 2255. A prisoner

seeking such relief under the "savings clause" must establish
that: (1) his claim is based on a retroactively applicable
Supreme Court decision which establishes that he may have been
convicted of a nonexistent offense, and (2) his claim was
foreclosed by circuit law at the time when the claim should have
been raised in his trial, appeal, or first § 2255 motion.
Reyes-Requena, 243 F.3d at 904. Such petitioners bear the burden
of demonstrating that the § 2255 remedy is inadequate or
ineffective. Jeffers v. Chandler, 253 F.3d 827, 830 (5th
Cir.2001); Pack v. Yusuff, 218 F.3d 448, 452 (5th Cir.2000). The
fact that a prior § 2255 motion was unsuccessful, or that the
petitioner is unable to meet the statute's second or successive
requirement, does not make § 2255 inadequate or ineffective.
Jeffers, 253 F.3d at 830; Toliver v. Dobre, 211 F.3d 876, 878
(5th Cir.2000).

Petitioner has not shown that § 2255's remedy is inadequate
or ineffective with regard to Claim VI. He suggests that he may
be entitled to § 2241 relief under the § 2255 savings clause
because of the intervening Supreme Court decisions in
Blakely/Booker/Fanfan.[8] While it is true that the Supreme
Court's decisions in Blakely and Booker and Fanfan had not yet

---

[8] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159
L.Ed.2d 403 (2004), United States v. Fanfan, 543 U.S. 220, 125
S.Ct. 738, 160 L.Ed.2d 621 (2005), United States v. Booker, 543
U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

been decided at the time of petitioner's trial, appeal, and/or prior § 2255 motion, his sentencing claim does not implicate his conviction for a substantive offense; and, the Supreme Court has not expressly declared Blakely, Booker, and Fanfan to be retroactive to cases on collateral review. See Booker, --- U.S. at ----, 125 S.Ct. at 769 (Op. by Breyer, J.) (expressly extending holding "to all cases on direct review"); Schriro v. Summerlin, --- U.S. ----, ----, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004) (holding Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which extended application of Apprendi to facts increasing a defendant's sentence from life imprisonment to death, is not retroactive to cases on collateral review); In re Anderson, 396 F.3d 1336, 1338-40 (11th Cir.2005); Green v. United States, 397 F.3d 101, 102-03 (2d Cir.2005); McReynolds v. United States, 397 F.3d 479, 480- 81 (7th Cir.2005).

As shown above, petitioner has already filed one unsuccessful Motion to Vacate. [See Truesdale v. United States, No. 3:96-cv-00109 (W.D.N.C.)] The fact that petitioner may be precluded from raising this claim in a second or successive § 2255 motion, does not make that remedy "inadequate or ineffective." See Jeffers, 253 F.3d at 830. Under these circumstances, petitioner cannot, based on the claims asserted in Claim VI, challenge the legality of his sentence under § 2241.

4. Claim VII

In Claim VII petitioner contends that the Supreme Court's decision in <u>Richardson v. United States</u>, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) mandates that the conviction be vacated. Petitioner suggests that, pursuant to the "savings clause" of 28 U.S.C. § 2255, he is entitled to assert in this *habeas corpus* petition a claim based on <u>Richardson v. United States</u>, 526 U.S. 813, 815-16, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). He contends that he was not found guilty of every element of his CCE offense because the jury was not properly instructed (as required by <u>Richardson)</u> that it was required to unanimously agree on which specific acts constituted his continuing series of violations.

As stated above, in order to avail himself of the savings clause of 28 U.S.C. § 2255, the petitioner's *habeas corpus* claim (1) must be "based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a <u>nonexistent offense</u>" and (2) must have been "foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first [28 U.S.C.] § 2255 motion." <u>Reyes-Requena v. United States</u>, 243 F.3d 893, 904 (5th Cir.2001).

The petitioner fails to provide any logical argument to establish that he is actually innocent of his conviction.

Engaging in a continuing criminal enterprise, a violation of 21 U.S.C. § 848, was a crime at the time of his conviction, and it continues to be a crime today. Petitioner was not convicted of a nonexistent crime. See <u>Kinder v. Purdy</u>, 222 F.3d 209, 213 (5th Cir.2000) ("Where the petitioner's case has been viewed as falling within the savings clause, it was in part because the petitioner arguably was convicted for a nonexistent offense."); see also <u>Jeffers v. Chandler</u>, 253 F.3d 827 (5th Cir.2001) (The <u>Jeffers</u> Court concluded that simply because Jeffers' jury was not instructed that it had to convict him unanimously on each of the specific violations that made up the alleged continuing series of violations, this did not amount to a claim that he was convicted of a "nonexistent offense" as required by <u>Reyes-Requena</u> ).

Petitioner has failed to satisfy the first prong of the savings clause test. See <u>Jeffers v. Chandler</u>, 253 F.3d 827, 830-31 (5th Cir.), *cert. denied*, 534 U.S. 1001, 122 S.Ct. 476, 151 L.Ed.2d 390 (2001).

### 5. Claim VIII

In Claim VIII petitioner argues that the Supreme Court's 1995 decision in <u>Bailey v. United States</u>, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) requires that his sentence be vacated. Petitioner's <u>Bailey</u> claim must fail, but for an entirely different reason. In <u>Bailey</u>, the Supreme Court conducted a routine statutory analysis and concluded that, "...the language,

context, and history of § 924(c)(1) indicate that the Government must show active employment of the firearm." See 516 U.S. at 144, 116 S.Ct. 501. Whether or not Bailey would apply with respect to petitioner's conviction is of no moment. As noted above, the petitioner's *habeas corpus* claim (1) must be "based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense" and (2) must have been "foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first [28 U.S.C.] § 2255 motion." Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir.2001).

Bailey was decided on December 6, 1995. Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Direct review of petitioner's conviction was pending until 1996 when the Fourth Circuit again affirmed his conviction after their previous remand. See U.S. v. Truesdale, 78 F.3d 580 (4th Cir. 1996). It remained pending on direct review until sometime later in 1996 when the United States Supreme Court denied petitioner's application for certiorari. Truesdale v. U.S., 517 U.S. 1215, 116 S.Ct. 1839, 134 L.Ed.2d 942 (1996).

Meanwhile, petitioner's Motion to Vacate under §2255 was filed in March, 1996, three months after the Bailey decision. See Truesdale v. U.S., No. 3:96-cv-00109. Thus, to the extent that petitioner had a viable claim under Bailey, that claim was not

"foreclosed by circuit law at the time when the claim should have
been raised in the petitioner's ... appeal, or first [28 U.S.C.]
§ 2255 motion."

Accordingly, petitioner may not avail himself of the
"savings clause" with respect to his Bailey claim.

### 6. Conclusion

Claims I, II, III, IV, and V purport to attack the manner in
which petitioner's sentence is being executed and are therefore
proper subjects for habeas corpus review under 28 U.S.C. §2241.
Nevertheless, the petition, its accompanying memorandum, and,
especially the exhibits submitted by the petitioner establish
that his claims are factually and legally without merit.

Claims VI, VII, and VIII attack the legitimacy of
petitioner's conviction. Ordinarily, such claims are more
appropriately raised in a Motion to Vacate filed pursuant to 28
U.S.C. §2255. A petitioner may raise such claims in a §2241
habeas corpus petition, but only if his claim is "based on a
retroactively applicable Supreme Court decision which establishes
that the petitioner may have been convicted of a nonexistent
offense" and which must have been "foreclosed by circuit law at
the time when the claim should have been raised in the
petitioner's trial, appeal, or first [28 U.S.C.] § 2255 motion."
Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir.2001).

Claim VI, based as it is upon the Blakely/Booker/Fanfan line

of cases, cannot survive "savings clause" scrutiny because these decisions have not been afforded retroactive application. Claim VII, based as it is upon <u>Richardson v. United States</u> likewise cannot survive "savings clause" scrutiny because the petition does not establish that petitioner was convicted of a "non-existent" crime. Finally, Claim VIII, based as it is upon <u>Bailey v. United States</u>, does not survive "savings clause" scrutiny because petitioner's <u>Bailey</u> claim (if applicable) was not foreclosed by circuit law at the time of his appeal and Motion to Vacate.

Accordingly,

**IT IS RECOMMENDED THAT** petitioner's Petition for Writ of *Habeas Corpus* be **DENIED** and **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking**

either the factual findings or the legal conclusions accepted by

the District Court, except upon grounds of plain error. See

*Douglas v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir. 1996).

    **THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana,

this _____ day of _____, 2006.

                              JAMES D. KIRK
                              UNITED STATES MAGISTRATE